UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-60285-CIV-UNGARO

_____

IRONSHORE INDEMNITY, INC.,

    Plaintiff,

v.

BANYON 1030-32, LLC, *et al.,*

    Defendants.

_____

### ORDER ON SECOND MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Two Count Amended Complaint, filed on June 9, 2010. (D.E. 37.)  Plaintiff filed a Response on June 14, 2010.  (D.E. 40.)

THE COURT has considered the Motion and pertinent portions of the record and is otherwise fully advised in the premises.

This case arises out of an excess insurance policy (the "Excess Policy") issued by Plaintiff Ironshore Indemnity, Inc. ("Ironshore") to Defendants[1] (collectively, the "Banyon Companies").  (Am. Compl. ¶ 15, Ex. C.)  The Excess

---

[1] The Defendants are Banyon 1030-32, LLC, Banyon Capital, LLC; Banyon Funding, LLC; Banyon Resources, LLC; Banyon Investments, LLC (Delaware); Banyon Investments, LLC (Nevada); Banyon USVI LLC; Banyon Income Fund, LP.

Policy provides excess coverage following a separate "claims made policy," issued to the Banyon Companies by another insurer, which covers claims made against the insurer during the policy period. (Am. Compl. ¶ 16, Ex. C & D.)  The Excess Policy provides $10 million of coverage if the $30 million of underlying coverage is exhausted.[2] (Compl. ¶ 22, Ex. C & D.)

According to Ironshore, the Banyon Companies and certain of their principals were involved in a criminal ponzi scheme conducted by Scott Rothstein. (Compl. ¶¶ 45 – 56.)  Ironshore alleges that the Banyon Companies misrepresented and omitted this and other material information in its application for insurance coverage and that numerous claims have now been brought against the Banyon Companies (by investors) arising out of these activities. (Compl. ¶¶ 45 – 56.)

Accordingly, Ironshore now seeks a declaration that it owes no duty to indemnify the Banyon Companies. In Count I, Ironshore seeks a declaration that the Excess Policy is void *ab initio* pursuant to Florida Stat. s. 627.409 because of misrepresentations made in the insurance application both relating to the ponzi scheme and otherwise. In Count II, Ironshore seeks, in the alternative, a

---

[2] The Policy states: "It is agreed the insurer shall pay the insured as defined in the Followed Policy for loss by reason of exhaustion by payments of all Underlying Policy Limits." (Compl. Ex. C.)

declaration that any indemnity claims arising from the ponzi scheme are excluded from coverage by the terms of the Excess Policy (as incorporated from the primary policy).

The Court previously dismissed Ironshore's initial Complaint *sua sponte* for failure to allege an adequate case or controversy under Article III because the Complaint failed to allege any facts which indicated the underlying coverage was exhausted. (D.E. 34.) Ironshore filed the instant Amended Complaint in an attempt to remedy the inadequacies of the initial Complaint and allege an Article III case or controversy.

In the Amended Complaint, Ironshore alleges an actual case or controversy exists because certain loss payees and insureds have submitted a demand and proof of loss in excess of the underlying coverage. (Am. Compl. ¶ 12.) Accordingly, Ironshore alleges "there is practical likelihood that the contingencies necessary to trigger excess coverage will occur." (Am. Compl ¶ 12.) Ironshore does not allege that the underlying coverage has been exhausted.

The Banyon Companies argue the Amended Complaint also lacks allegations reflecting an adequate case or controversy. "It is now axiomatic that 'Article III of the Constitution limits the 'judicial power' of the United States to

3

the resolution of cases and controversies."[3] *DiMaio v. Democratic Nat. Committee*, 520 F.3d 1299, 1301 (11th Cir. 2008) (citations omitted). "That a plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not relieve him of the burden of satisfying the prerequisites for standing, since 'a declaratory judgement may only be issued in the case of an actual controversy." *Id.* (citations omitted). The "controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than a speculative threat of future injury." *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342 (11th Cir. 1999).

Here no case or controversy exists because the excess coverage is contingent on exhaustion of the underlying coverage and the underlying coverage has not been exhausted. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*, 2009 WL 3518070, *4 (N.D. Ohio Oct. 23, 2009) (holding declaratory action involving excess insurer lacked an actual case or controversy despite demand sufficient to reach into excess layer because it was undisputed that the

---

[3] Although this action sounds in diversity and Count I is based in part upon a Florida statute, "whether a certain case presents a controversy under Article III of the Constitution is a question of federal law to be resolved independent of state law." *Am. Ins. Co. v. Evercare Co.*, — F. Supp. 2d —, 2010 WL 902571, *4 (N. D. Ga. Mar. 8, 2010). And because it goes to subject matter jurisdiction, the Court can raise the issue *sua sponte* at any time. *See Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 139 (D.D.C. 2009).

underlying layer was not exhausted and that excess coverage was contingent on exhaustion); *Providence Journal Co. v. Travelers Indem Co.*, 938 F. Supp. 1066, 1080 (D.R.I. 1996) (same); *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 909 (S.D. Miss. 1991) (same); *see generally Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy ... to warrant the issuance of a declaratory judgment."); *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985) ("A plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred"); *Int'l Harvestor Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980) ("The Complaint in a declaratory judgment action must allege facts sufficient to establish such an actual controversy."); *Nirvana Condo. Assoc., Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008) ("A party seeking a declaration must allege facts in a complaint from which it appears that there is a substantial likelihood that it will suffer injury in the future.") (citations omitted).

Ironshore's allegations regarding the "practical likelihood" of exhaustion are unavailing. The cases cited by Ironshore are inapposite. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001) (upholding existence of

5

actual case or controversy as to excess insurer where "all disputes with ... primary insurers were at an end, and only excess insurers remained" and "a number of issues remained to be decided which ... could have affected" the excess insurers); *SIG Arms, Inc. v. Employers Ins., of Wausau*, 2000 WL 1499456, ** 3 – 4 (Apr. 26, 2000) (holding practical likelihood of exhaustion of $1 million in underlying coverage existed based on $110 million demand where underlying insurers were also parties to declaratory action and excess insurer developed no argument as to the weakness of the underlying claims); *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d 22, 30 – 31 (D. Mass. 2000) (holding case or controversy existed between insured and excess insurer which was also a primary insurer).  Here Ironshore's allegations are insufficient to indicate a "practical likelihood" of exhaustion.  That the coverage demand (or proof of loss) exceeds the underlying coverage does not without more indicate a "practical likelihood" of exhaustion in this case.  There is no indication that the underlying insurers are likely to pay the claims.[4]  Ironshore's allegations regarding the lack excess coverage are largely if not entirely applicable to the underlying coverage—Florida Stat. s. 627.409 applies with equal force to the primary policy and the exclusions relied on by

---

[4] In fact, the evidence indicates a separate action to determine coverage brought by the underlying insurers is pending in the Middle District of Florida.  (D.E. 28.)  And it is unreasonable to think the underlying insurers would not litigate these issues in the face of a $30 million coverage exposure.

Ironshore are incorporated from the primary policy.[5] Thus, Ironshore's allegations regarding the insurance application and potential criminal or fraudulent activities work to severely undercut the likelihood of exhaustion of the underlying coverage.

In its Response, Ironshore argues its claim for rescission in Count I involves an adequate case or controversy regardless of exhaustion or pending claims. The Court disagrees that a declaratory action under Florida Stat. s. 627.409 inherently involves an adequate case or controversy regardless of any adequate coverage controversy. Initially, the Court notes that the plain language of the statute indicates it was intended as a defensive mechanism for insurers: "A misrepresentation, omission, concealment of fact, or incorrect statement *may prevent recovery* under the contract or policy...." *See* Fla. Stat. s. 627.409 (emphasis added); *Continental Assurance Co. v. Carrol*, 485 So. 2d 406, 409 (Fla. 1986) ("The plain meaning of the statute indicates that, where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application *will prevent recovery* under an insurance policy." (emphasis added)); *Life Ins. Co. of Va. v. Shifflet*, 201 So. 2d 715, 719 (Fla. 1967) (same). Indeed, Ironshore has not cited and this Court has not discovered a single case of record

---

[5] Indeed, the coverage of the Excess Policy follows that of the primary policy. (Am. Compl. ¶¶ 15 – 17, 23.)

where an insurer maintained a declaratory action pursuant to Fla. Stat. s. 627.409 in the absence of a pending claim.[6]

Further, the cases cited by Ironshore are unpersuasive.  *See Fabric v. Provident Life & Accident Insurance Co.*, 115 F.3d 908 (11th Cir. 1997) (involving a pending claim for benefits against a disability insurer);[7] *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48 (2d Cir. 1996) (not considering Fla. Stat. s. 627.409 but holding an adequate controversy remained as to rescission of an insurance contract despite the resolution of all the claims between the insured and the insurer where the insurer was involved in separate litigation which turned on the validity of the insurance contract); *Sun Life Assurance Co. of Canada v. Moran*, 2009 WL 2450443 (D. Ariz. Aug. 11, 2009) (not considering Fla. Stat. s. 627.409 but holding an adequate controversy remained as to rescission of a life insurance contract which was allegedly made in violation of Arizona's insurable interest law despite the absence of a pending

---

[6] To be sure, in *Gonzalez v. Eagle Insurance Co.*, 948 So. 2d 1, 2 – 4 (Fla. 3d DCA 2006), the Court held that an insured could maintain a declaratory action, under Florida's declaratory judgment law, for the return of premiums where the insurer refused to pay a claim under Fla. Stat. s. 627.409.

[7] Ironshore quotes the statement in *Fabric* that "Where a misrepresentation occurs that meets the requirements of § 637.409 the insurer, as a matter of right, may unilaterally amend," but the Court does not find that statement determinative of the legal issue at hand, especially considering a claim was pending in *Fabric*. *See* 115 F.3d at 912 (citing *Pino v. Union Bankers Ins. Co.*, 627 So. 2d 535 (Fla. 3d DCA 1994) (involving a pending claim)).

claim because the insurer would otherwise suffer an injury by virtue of the continuing violation of Arizona law and public policy); *Stalsberg v. New York Life Ins. Co.*, 2007 WL 2572396 (D. Utah Sept. 5, 2007) (similar). Accordingly, the Court will dismiss this case for lack of case or controversy.

In the alternative, the Court notes that even if the likelihood of exhaustion was sufficient to establish a case or controversy, the Court would decline to exercise its discretionary jurisdiction in this case. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). Ironshore's arguments regarding coverage will likely be resolved between the underlying insurers and the Banyon Companies. None of the underlying insurers is a party to the instant action. And the evidence indicates a separate lawsuit is pending in another district which includes the underlying insurers. Thus, this action would unnecessarily risk inconsistent judgments on numerous common questions of law and may very well be purely hypothetical. For these reasons, the Court would decline to exercise its discretionary jurisdiction in this case regardless of any "practical likelihood" of exhaustion.

Accordingly, it is hereby

ORDERED AND ADJUDGED that this case is DISMISSED FOR LACK OF CASE OR CONTROVERSY. If is further

ORDERED AND ADJUDGED that the Clerk of Courts SHALL administratively close this case.  It is further

ORDERED AND ADJUDGED that all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers in Miami, Florida, this 17th day of June, 2010.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record